J. I. REECE, Complainant, v. CARSON-NEWMAN COLLEGE, Defendant.

Eastern Section. June 8, 1932.

Petition for Certiorari denied by Supreme Court, October 17, 1932.

544

Dugger & Reece, of Elizabethton, for appellant.
C. P. Rankin and J. D. Hale, both of Jefferson City, for appellee.

SENTER, J. The bill in this cause was filed by complainant seeking to recover on an alleged contract of employment as Dean and Professor of Philosophy of Carson-Newman College, a Baptist denominational school, located in Jefferson City, Tennessee, for the alleged breach of said contract.

The bill alleges in substance that complainant was first employed as Dean and Professor of Philosophy by Carson-Newman College in 1920, for one year, and that he was also re-elected for one year to the same position for the years 1922 and 23; that in 1924 his contract sued on in this case was delivered to him by the President, Dr. O. E. Sams, and was on the usual mimeograph form, except that in the written portion it was stated that his term of employment covered the scholastic years of 1924-25, and 1925-26, and 1926-27; that the contract was prepared in duplicate and was signed by Dr. O. E. Sams, in his capacity as president of Carson-Newman College, and was also signed, or rather accepted by the signature of complainant, and witnessed by Miss Martin, who was then a student in the school and employed in the office of the Dean. The bill further alleges that after the contract of employment had been signed in duplicate, a copy of same being retained by Dr. O. E. Sams, and a copy delivered to complainant, J. I. Reece, that he decided to obtain a leave of absence for one year, but to receive one-half of the annual salary provided in the contract, which was $3,000 per year, so that

he could enter Chicago University and obtain from that institution his Doctor of Philosophy degree; that this proposition was submitted to the executive committee of the Board of Trustees of defendant, and was accepted by the executive committee, and the leave of absence for one year was granted and complainant to receive one-half of the annual compensation, or $1500 for that year; that pursuant thereto he entered Chicago University, but that on account of ill health he did not remain for the entire year; that a substitute Dean and Professor of Philosophy was employed to fill his position during his leave of absence; that defendant, acting by and through its trustees and executive committee, breached the contract of employment by refusing to have him continue as Dean and Professor of Philosophy for the remaining two years; that he was unable to procure other employment, and as a result of the breach of the contract he was damaged in the sum of the two years salary, amounting to $6,000, and for which amount he sued in this cause.

The defendant answered the bill, and by the answer it is averred that the contract of employment was only for one scholastic year, 1924-25 term, and that the contract sued upon had been altered, changed and forged by inserting therein the additional two years, and by adding the letter ''s'' to the word ''year'' as the same appeared in the contract. This was a special plea of non est factum. The answer further denied that a contract had been made with complainant for more than one year, and that defendant had only been elected for the scholastic year 1924-25; that if the President of the college had written into the contract the additional two years, that he did so without any authority from the trustees or the executive committee, or anyone else having authority to bind the college; and denied that such a contract had been entered into. The answer further alleged that the Board of Trustees had the exclusive authority to elect members of the faculty for the school, and that the authority of the Board of Trustees to elect the faculty was limited to the election of any teacher for not more than one year at the time.

Upon the pleadings as thus made up, a large amount of evidence was taken in the form of depositions, and the cause was heard by the Chancellor. There is an elaborate finding of facts and conclusions by the Chancellor contained in the record. The Chancellor held and so decreed that the plea of non est factum, based upon the allegation of alterations, forgery, etc., relied upon by the defendant, was not sustained by the evidence, and held that the contract filed as an exhibit in the cause, and which on its face showed it to be a contract between complainant and defendant, by which complainant was employed as Dean and Professor of Philosophy for the years 1924-25, 1925-26, 1926-27, had not been altered or changed by complainant, and was, according to a preponderance of the evidence in the same

form when it was executed and delivered by Dr. O. E. Sams, President of Carson-Newman College. The Chancellor further held, however, that Dr. O. E. Sams was not authorized to execute a contract binding the defendant school, and that the sole authority for the election of members of the faculty was vested in the Board of Trustees, and that the Board of Trustees had not authorized Dr. Sams to prepare a contract and execute the same in the name of defendant for more than one year, and that for the scholastic year of 1924-25, and that in attempting to execute a contract in the name of the school with complainant for a longer period than one scholastic year, he exceeded his authority. The Chancellor further held that the Board of Trustees had only elected complainant to said position for the scholastic year of 1924-25 at the salary of $3,000. The Chancellor further held that it had been the uniform custom of the Board of Trustees to elect all members of the faculty, including the President and the Dean, for only one year at the time. The Chancellor also found that it was the duty of the President of the college to recommend to the Board of Trustees members of the faculty to be elected, and that pursuant to this duty, Dr. Sams recommended to the Board of Trustees the re-election of complainant in 1924 for the scholastic year of 1924-25, and that when his name was so presented to the Trustees that he was elected for that scholastic year. The Chancellor further found that for some reason, the contract entered into between complainant Reece and defendant college was not made for one scholastic year, as directed by the Trustees, but that the President, Sams, disregarded the instruction of the Trustees, and without authority or without the knowledge or consent of said Trustees, made the contract for three years with complainant Reece; the Chancellor further found that by a preponderance of the evidence this contract was handed to Dean Reece by President Sams; that when the contract was presented to Dean Reece, he did not immediately sign the same, but took it to his wife, and they advised together relative to the expediency of Dean Reece accepting the same; that at this time the authority of President Sams to make the three year contract was questioned, and that the record discloses that Dean Reece nor his wife, who was a witness, had any confidence in the President. The Chancellor further found that after advising with his wife, complainant accepted the contract; however, the Chancellor further found that complainant knew or was put upon notice to inquire, that President Sams did not have any authority to bind the defendant college to a three years contract of employment; that the facts and circumstances surrounding the execution and delivery of the contract by Dr. Sams, together with complainant's knowledge of the custom of the Board of Trustees to elect for only one year, were sufficient to put complainant upon notice that Dr. Sams was

exceeding his authority in undertaking to bind the defendant to a three years contract with complainant. The Chancellor further found that complainant Reece, although on friendly terms with some members of the Board of Trustees and the executive committee of defendant, never at any time mentioned to either of them that he had a contract for three years employment, and that he sought re-election in 1925 at the hands of the Board of Trustees for the scholastic year of 1925-26. Upon these facts as found by the Chancellor, in the memorandum opinion filed by the Chancellor, the Chancellor held and so decreed that complainant had not made out a case entitling him to recover against the defendant upon the contract sued upon, and that upon the facts and the law applicable thereto complainant was not entitled to any of the relief sought, and dismissed the bill at complainant's cost.

From this decree complainant prayed and was granted an appeal to this court, which appeal has been duly perfected and errors assigned.

By the several assignments of error it is contended, (1) that the Chancellor erred in finding and holding that O. E. Sams, as president of the defendant corporation, had no right or authority to make contracts with faculty members; and (2) that the Chancellor erred in finding and holding that Dr. O. E. Sams, president of defendant corporation, disregarded the instructions of the Board of Trustees and executed a contract with complainant for three years, without the authority, knowledge or consent of the Board of Trustees; and (3) that the Chancellor erred in holding that complainant, Dean Reece, knew President Sams had no right or authority to execute a contract of employment with him for three years, and that the Trustees had not elected him for three years; and, (4) that the Chancellor erred in holding that complainant Reece was in fault in failing to ascertain his status under his contract at the time of its execution; and, (5) in holding that complainant Reece did not let the Trustees know anything about the three year contract, and that they did not know about it until shortly before the suit was filed; and, (6) that the Chancellor erred in finding and holding and decreeing that the defendant corporation could only elect its faculty for one year, and (7) that the Chancellor erred in finding and holding that no member of the Board of Trustees had any knowledge of the three year contract and that the Trustees never authorized Dr. Sams to make said contract, and did not ratify or acquiesce in the election of complainant Reece for three years; and (8) that the Chancellor erred in finding from the evidence that any bad faith was shown on the part of complainant Reece in his dealings with defendant corporation, and that said defendant was free from bad faith; and (9) that the Chancellor was in error in failing to find

548

not only that complainant acted in good faith in all his dealings with the defendant, but also that he was ready, willing and able to carry out and perform his part of the contract according to its terms, and that he was prevented from so doing by the wrongful breach and repudiation of said contract by the defendant; and (10) that the learned Chancellor erred in holding and decreeing that complainant had not made out a case entitling him to recover and in dismissing the suit.

The record in this case is elaborate. Numerous depositions were taken by the respective parties, and the record discloses a very unusual state of facts. The several assignments of error will not be taken up and disposed of separately or in the order as filed. Much of the record and the evidence deals with the relations that existed between Dr. Sams, the former President of Carson-Newman College, and the complainant, J. I. Reece. It would serve no good purpose to go into a detailed statement and discussion of the cause of the evident lack of good feeling between these men. However, it is perhaps necessary to refer to some of the incidents. It appears that Mr. Reece received an anonymous letter which seriously reflected upon his morals and the morals of a certain member of his family. There was no foundation for this serious reflection. Mr. Reece ultimately traced the source of this anonymous communication to Dr. O. E. Sams, the president of the college. Dr. Sams admitted writing the letter, and admitted that he was mistaken, and made a statement to that effect to the Board of Trustees, and by which he retracted the charges. This occurred shortly before the Board of Trustees were to meet in April, 1924, to re-elect the faculty. After this retraction had been made, Dr. Sams recommended Mr. Reece for re-election as Dean of the college and Professor of Philosophy, and the Board of Trustees, upon the recommendation of Dr. Sams, elected complainant for the 1924-25 scholastic year at a salary of $3,000. The Board of Trustees knew of the strained relations between Dr. Sams and complainant. It would seem that considerable publicity had been given to the false rumors put in circulation against the character of complainant, and this had very probably resulted in some general criticism of Dr. Sams. When the Commencement Exercises were held at the college, the Board of Trustees had prepared a statement to be read at the Commencement Exercises, expressing full confidence in Dr. Sams, and commending him in very high and laudatory terms, and also the unusual good condition of the institution under his leadership as president; and also commended the faculty for its excellent work during the previous year, and also requested full co-operation from all members of the faculty and the student body with Dr. Sams, and enjoining and admonishing loyalty to Dr. Sams. Following the commencement, and

a few days thereafter, Dr. Sams went into the office of Dean Reece with the two copies of the contract. We think it clear from the record in this case that by a decided preponderance of the evidence, that the contract as presented to Mr. Reece by Dr. Sams at that time, contained all the provisions with reference to the term of employment as the contract sued on, and the contract filed as an exhibit and made the basis of the suit has not been altered or changed in any way or manner since it was presented to Mr. Reece by Dr. Sams. Dr. Sams, in his deposition, stated positively that the contract had been changed since it was executed by him and delivered to complainant. He states positively that the contract as presented and signed by him only covered the scholastic year 1924-25, and that the other figures covering the scholastic years of 1925-26, 1926-27, and the letter "s" to the word "year," had been added since he executed and delivered the same to complainant. No doubt it was upon these representations made by Dr. Sams to members of the Board of Trustees that resulted in the answer charging that the contract had been altered and changed and a forgery uttered. We think the Chancellor reached the correct conclusion in holding that the plea of non est factum could not be sustained, and that there had been no alteration made to the contract. Mr. Reece, and his wife, and Miss Martin, who was in the Dean's office at the time the contract was signed and who witnessed the contract, all testified that the contract covered a three year period as written into the contract before it was signed by Dr. Sams, as president of defendant college. Other facts and circumstances disclosed by the record support the contention that there had been no alteration or change made in the contract. Dr. Sams was for some reason trying to curry favor with Mr. Reece, but we think it clear from the record in this case that in doing so he was actuated by ulterior motives. We also think it clear that when Dr. Sams presented this contract covering the three year period, that complainant Reece, knowing it to be unusual, inquired of Dr. Sams if he had authority to execute the contract for the defendant for a period of three years, and Dr. Sams assured him that he did have such authority. It also appears from the evidence of Mr. Reece and Miss Martin, that Mr. Reece suggested to Dr. Sams at the time that it would probably be well for him to take it up with the Board of Trustees or the Chairman of the Board to ascertain if it was authorized by the board, and that Dr. Sams stated that under the circumstances he thought it best to let him handle it, and that it would be better for Dr. Reece not to take it up with the Board as it would appear to be questioning Dr. Sams' authority, and for this reason he did not inquire of the Board if he had been elected for a term of three years. Mr. Reece does not claim that at any time, until shortly prior to the bringing of the suit,

made any claim to the Board of Trustees or any member thereof, that he held the contract covering a three year period. He explains that his failure to do so was because he had lost or misplaced the contract, and that he had completely lost confidence in Dr. Sams, and that he would not be able to set up the contract, and that he thought his best chance to continue with the school would be to have the Board re-elect him at its April, 1925, meeting, and to this end he did take up or communicate with some members of the Board a request that he be re-elected.

It also appears that a Mr. Sharp, who subsequently became Dean of the college, was sued by complainant for alleged defamation of character, by continuing to circulate the same false rumors and propaganda that had been commenced by Dr. Sams. This suit was later dismissed. Mr. Reece contends that he dismissed the suit because an agreement with certain members of the executive board or committee that they would pay him $2,000 in settlement of that suit. It does appear that certain members of the committee did pay to Mr. Reece the sum of $2,000. They deny, however, that it was in settlement of the Sharp suit, or to procure a dismissal of that suit, but insist that it was but a donation made to Mr. Reece by certain individuals, and not as officers of the school, to relieve his financial distress. However, we find much in the record to corroborate the theory of complainant that it was at least a part of the consideration for making the donation by these individuals that this suit would be dismissed. This appears from a letter written by Dr. Brown, the then pastor of the First Baptist Church at Knoxville, to complainant, and enclosing an order dismissing the suit.

We do not find anything in the record to warrant the conclusion that complainant Reece at any time acted in bad faith in any of his dealings with the school. He was a graduate of that institution, and had obtained his A. B. degree from defendant college. He had been a successful school man in Florida after his graduation, and was voluntarily tendered the position and elected Dean of defendant college in 1920. His brothers and sisters had been educated at this school, and he no doubt entertained a very warm feeling for the institution. We think that he was made the unfortunate victim of false rumors and reports. When the Board of Trustees elected him in 1924, we do not think they elected him for but one year, and that Dr. Sams, for his own purposes, represented to complainant Reece that he had been elected for a period of three years, and that he was acting by the authority of the Board of Trustees in preparing and tendering to him a contract covering employment for three years. We also think that Mr. Reece was led to believe by Dr. Sams that it would be improper for him to take the matter up with the Board of Trustees to ascertain for himself if the three years contract had

been authorized by the Board. However, Mr. Reece and his wife both admit that they did not have any confidence in the sincerity of Dr. Sams, and this was discussed between them before Mr. Reece accepted the contract and signed the same. Mr. Reece certainly knew of the general custom of the Board of Trustees to elect members of the faculty for only one year. He had full access to the by-laws which were annually published in the catalog of the school, and during his connection with the school prepared certain parts of the catalog pertaining to his department. The by-laws stated that the authority of the Board of Trustees to elect and contract with members of the faculty was vested solely in the Board of Trustees. It does appear from the by-laws that the president of the college was an ex-offficio member of the executive committee. However, the duties of the president are set forth in the by-laws. It is nowhere provided in the by-laws that the president has any authority to elect or to contract members of the faculty. It appears that it was the custom of the Board of Trustees to have the president notify the members of the faculty of elections. In recent years the president adopted the plan of preparing contracts to be executed by the president for the college and to be accepted in writing by the members of the faculty. However, we do not find that there was any by-law requiring this of the president. It would appear that the president was instructed by the Board of Trustees to notify the members of the faculty elected, and the salaries to be paid. Mr. Reece evidently knew of this custom, because he testified that after he became Dean he discussed with President Sams the expediency of preparing mimeograph copies or forms to be signed by the President and the acceptance of the members of the faculty to be signed thereto.

If there had been nothing in the by-laws to put complainant upon notice that he had been elected for only one year; or if he was not familiar with the by-laws on that subject; and there had been nothing in the circumstances surrounding the whole transaction that was out of the usual or ordinary, it may be that the President was acting within the scope of his authority in presenting and signing a contract binding the school to the employment of complainant for a period of three years.

However, we cannot escape the conclusion that complainant knew that the custom of the Board of Trustees was to elect members of the faculty for only one year. He had abundant opportunity to be familiar with the by-laws, and the by-laws set forth the duty of the Board of Trustees to annually elect members of the faculty. In addition to this, he admitted that he had his doubts as to both the authority of President Sams to bind the school for a three years contract, and also in his sincerety. He never at any time made any inquiry of any member of the Board of Trustees to ascertain if he

had been elected for a period of three years. Ordinary prudence would have dictated that he make some inquiry to ascertain the true facts, especially since he entertained the doubt as to the authority of President Sams, and his motive. Another fact that essentially challenges the attention of this court as disclosed by the record is with reference to the leave of absence for one year. We think it clear from the record that Mr. Reece had two motives in requesting leave of absence. The first, and probably the primary motive, was his relations with Dr. Sams, and also to get away from the atmosphere that had caused him much pain and embarrassment because of the false rumors that had been circulated with persistence. He desired to get away from his then environment, and to seek employment at some other institution of learning. He expressed this in his conversations with members of the executive committee, and also in discussing with Dr. Sams the expediency of him accepting the three years contract which would bind him to continue with the school for that period of time. His second object was to avail himself of the opportunity to obtain his Doctor's degree at Chicago University, and which would enable him to procure a better position. In this situation, he requested a leave of absence and to receive one-half of his salary for one year. It is urged with much earnestness by appellant in the brief, that the fact that complainant sought and was granted a leave of absence for the entire scholastic year of 1924-25 is a circumstance evidencing that the trustees or the executive committee knew that he had been elected for three years, or for more than one year. This contention rests largely upon the theory that if he had only been elected for one year that he could have resigned, or not accepted the employment for one year. This contention is met with the very logical argument that if he had not accepted for the one year, or if he had resigned after election, that he would not have drawn any compensation, and that by pursuing the course he did pursue, he received compensation on the basis of fifty per cent. There is some reason and logic in the insistence by appellant that the executive committee would not have granted him a leave of absence for the entire year and at the same time agree to pay him fifty per cent of his salary for that year, if he had only been elected for one year. We think this is explained by the members of the executive committee, and especially the sub-committee that conferred with complainant on this matter when it was said that it was deemed best by all parties, in view of the embarrassing situation that had developed that complainant be elected for one year, and then be granted a leave of absence for that year at one-half salary so as to relieve the situation of the embarrassment that would have resulted in failing to re-elect him for the one year, and that it was therefore, an arrangement that appealed to all the

parties as being a proper solution of the very embarrassing situation that had arisen, and for which the executive committee did not seem to feel that complainant was personally at fault. While this explanation is not so stated by the members of the executive committee in so many words, we think that it is fairly inferable from all the other facts and circumstances shown by the record.

The conclusion we reach is that the sole authority for electing members of the faculty is vested in the Board of Trustees, and the president has no authority to bind the Board of Trustees, or the college, beyond the instruction specifically given by the Board of Trustees. We are further of the opinion that complainant Reece, knew that the duty of electing and contracting with members of the faculty was primarily vested in the Board of Trustees, and that the President of the college was without any authority to enter into any contract for the employment of members of the faculty, but was only authorized to notify members of the faculty of their election, and in accordance with the instructions given by the Board of Trustees to make the contract with the members of the faculty. We are further of the opinion that complainant was fully aware of the custom of the Board of Trustees to elect members of the faculty for only one year, and that he had ample opportunity of knowing the by-laws of the Board of Trustees on the subject of the election annually of members of the faculty. Having this knowledge, he acted at his own risk or hazard in relying upon the assumed authority of President Sams in tendering contract covering a three years period, and binding the college to a contract for three years employment. He was certainly put upon notice of the limited authority of President Sams in the premises, and cannot therefore be heard to say that President Sams was acting within the apparent scope of his authority.

It results that we find no error in the decree of the Chancellor in dismissing complainant's bill at the cost of complainant, and his decree is accordingly affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.